**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

V.                                                            Criminal No. 06-102 (JDB)

**ANDERSON STRAKER**

## MOTION TO DISMISS INDICTMENT

Defendant, by and through undersigned counsel, Steven R. Kiersh, does hereby move to dismiss the indictment pending against him. In support thereof, defendant states as follows:[1]

**The Federal Hostage Taking Statute, as applied to Anderson Straker, is Unconstitutional in that it Violates the Due Process Clause of the United States Constitution and the Equal Protection Clause of the United States Constitution.**

At the outset, defendant maintains that 18 U.S.C. § 1203 (a) facially discriminates on the basis of alienage and the arbitrarily unequal treatment of Mr. Straker can not survive constitutional scrutiny. Accordingly, defendant seeks dismissal of the indictment.

18 U.S.C. § 1203 (a) states in relevant part:

(a) Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so....

---

[1] Defendant is charged with violating 18 U.S.C.§ 1203 (a) (Conspiracy to Commit Hostage Taking Resulting in Death); 18 U.S.C. § 1203 (a) (Hostage Taking Resulting in Death); and 18 U.S.C. § 2( Aiding and Abetting Causing an Act to be Done).

1

>   (b)(1) It is not an offense under this section if the conduct required for the offense occurred outside the United States unless—
>
>   >   (A) the offender or the person seized or detained is a national of the United States;
>   >
>   >   (B) the offender is found in the United States; or
>   >
>   >   (C) the governmental organization sought to be compelled is the Government of the united States.[2]
>
>   (2) It is not an offense under this section if the conduct required for the offense occurred inside the United States, each alleged offender and each person seized or detained are nationals of the United States, and each alleged offender is found in in the United States, unless the governmental organization sought to be compelled is the Government of the United States.

The plain language of the subject statute is discriminatory on the basis of alienage. See *United States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir. 1995).Mr. Straker, a citizen of Trinidad/Tobago, is subject to prosecution under the Hostage Taking Act solely by virtue of the government's suggestion that decedent Mr. Maharaj was a citizen of the United States. If the crimes alleged in the indictment were committed by a citizen of the United States, that person could not be prosecuted under 18 U.S.C. § 1203. Thus, Mr. Straker is subject to prosecution exclusively by virtue of his alienage.

Even though Anderson Straker is present in the United States as an alien facing criminal prosecution in a United States District Court for a crime committed against a citizen of the United States, he is entitled to the full protections of the United States Constitution. As stated by the Supreme Court in *Matthews v. Diaz:*

>   There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of those persons from deprivation of life, liberty, or property without due process of law. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 48-51

---

[2] Subsection (b) (1) (A) is the operative part pertaining to this indictment. The decedent is alleged to have been a citizen of the United States.

2

( 1950); *Wong Wing v. United States*, 163 U.S. 228, 238 (1895); see *Russian Fleet v. United States*, 282 U.S. 481, 489 ( 1931). Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection. *Wong Yang Sung*, supra; *Wong Wing*, supra

426 U.S. 67, 77

The Supreme Court has repeatedly disapproved of statutes that discriminate against any class of individuals. "(T)he Equal Protection Clause requires the consideration of whether the classifications drawn by any statute constitute an arbitrary and invidious discrimination. The clear and central purpose of the Fourteenth Amendment was to eliminate all official state sources of invidious racial discrimination…." *Loving v. Virginia*, 388 U.S. 1, 10 (1967). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is prevention of official conduct discriminating on the basis of race. It is also true that the Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229,239 (1976). "This strong policy renders racial classifications constitutionally suspect, and subject to the most rigid scrutiny and in most circumstances irrelevant to any constitutionally acceptable legislative purpose." *McLaughlin* v. *Florida*, 379 U.S. 184, 192 (1967).

Concerns that relate to discrimination based upon a status such as that held by Mr. Straker were expressed in the debate that preceded the enactment of the Fourteenth Amendment. Senator Howard pronounced:

> It establishes equality before the law, and it gives to the humblest, the poorest, the most despised of the race the same rights and the same pro-
> tection before the law as it gives to the most powerful, the most wealthy, or the most haughty… Most frequently, claims of denial of equal protection of the law are asserted by the members of a class of persons easily defined

by a characteristic such as race, sex, *alienage*, illegitimacy, or religion. Cong. Globe, 39th Cong., 1st Session, 2766 (1866). emphasis supplied.

In analyzing a claim regarding a statutory violation of equal protection, the first step is determining whether the law treats members of a certain group differently from other individuals solely because of membership in a particular group. *See Jones v. Helms,* 453 U.S. 412, 423-424 (1981). If the reviewing court determines that a cognizable class is treated differently, it must then analyze the statute under the appropriate level of scrutiny to determine whether the distinction made between the groups is justified. See *Plyler v. Doe*, 457 U.S. 202, 217-18 (1982).

Mr. Straker clearly belongs to cognizable class of individuals who are targeted by the subject statute. His alienage alone is what puts him into the category of people subject to prosecution under 18 U.S.C.§ 1203. Aliens as a cognizable class are entitled to strict judicial scrutiny when challenging a statute that appears to be discriminatory. "(T)he Court's decisions have established that classification based upon alienage… are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a discreet and insular minority for whom such heightened judicial solicitude is appropriate." *Graham v. Richardson*, 403 U.S. 365, 371-72 (1971) (citations omitted). This Circuit and the Supreme Court have deplored distinctions of treatment based upon alienage as being as unacceptable as disparate treatment based upon race. "In legal theory, distinctions based upon ancestry are as odious and suspect as those predicated on race." *United States* v. *Doe,* 903 F.2d 16, 21-22(D.C. Ci. 1990); *See Hirabayashi v. United States*, 320 U.S. 81, 100 (1943).

When, such as herein, there is a classification based upon a cognizable class of individuals, the government must demonstrate that there is a substantial need for such a

4

classification and that efforts have been made to limit the discriminatory impact of the statute. "Federal racial classifications… must serve a compelling governmental interest, and must be narrowly tailored to further that interest." *Adarand Constructors, Inc v. Pena,* 515 U.S. 200, 235 (1995), citing *Fullilove v. Klutznick*, 448 U.S. 448 (1986). Accordingly, defendant submits that where there exists a federal criminal offense that facially identifies a class of individuals for prosecution based upon their alienage, the statute must be narrowly drafted and must advance a compelling government interest. The subject Hostage Taking Act is far too broad and, with respect to Mr. Straker, does not serve a compelling interest of the United States.

The legislative history of 18 U.S.C. § 1203 suggests that the principle purpose for its implementation was to combat international terrorism and to protect United States citizens from such acts. The legislation was proposed by President Reagan on April 29, 1984 as a means of combating international terrorism. See H.R. Doc. No. 98-211, 98th Cong., 2d Sess. (1984). The legislation was ultimately passed by Congress and President Reagan signed the Hostage Taking Act into law in 1984. The legislative history suggests that the Act was directed towards acts of terror while simultaneously seeking to ensure that the statute did not usurp the state's power to prosecute kidnapping crimes under their own laws.

During the Congressional hearings on Senate Bill 2624, which was the precursor to the Hostage Taking Act statute, Deputy Assistant Attorney General Victoria Toensing stated that while it provided for broad jurisdiction over the hostage-taking offense, the bill did not intend to displace existing state kidnapping laws. "Although the Bill is not limited to hostage-taking…we do not intend to assume jurisdiction where there is no

compelling federal interest." Legislative Initiative Hearings 98th Cong., 2d Sess. 48-49 (1984). Senator Leahy addressed the federalism concern to the Justice Department and the response certainly suggests that the targets of the bill were a narrow class of individuals that most probably did not include someone charged with the conduct attributed to Anderson Straker.

> Question #8 from Senator Leahy: While I appreciate the need to honor international obligation…this legislation is another example of a bill that extends federal jurisdiction in an area that has been traditionally the domain of local law enforcement authorities. This approach has been in such bills as the Career Criminal Act and has not fared well with a number of us in the Senate with actual law enforcement experience at the state level.
>
> Answer: As reflected by the answers to the previous questions, the Department of Justice is very sensitive to issues of federalism in the area of law enforcement…the entire body of material submitted by the Administration in support of S. 2624 clearly demonstrate the continuing vitality of the state's primary responsibility for handling hostage taking situations. S. 2624 while being sought because of our international obligations, supplements state law. It does not supplant it. We are confident that this message will be understood and will be well received….

Legislative Initiative Hearings, 98th Cong., Hearings, 2d Sess. 129-130 (1984).

The Legislative History of the Hostage Act quoted President Reagan when he addressed the importance of the narrow reach of the Hostage Taking Act.

> [T]he new provision on hostage-taking is not intended to usurp the authority of state of state and local law enforcement authorities. It is expected that most kidnappings and hostage-takings will continue to be handled by those authorities and that the federal government will not necessarily intervene in situations that local authorities can handle.

Id. at 126.[3]

---

[3] Defendant recognizes that herein there is no state within the United States that had its power to prosecute this case usurped by the United States. That is beside the point. The point for consideration is that the government of Trinidad/Tobago could have prosecuted this case because the crime occurred in that nation. Indeed, the country of Trinidad/Tonabgo commenced prosecution of this matter and at least four other men are facing prosecution in Trinidad/Tobago. This is not a situation where an act of terror has occurred against a citizen of the United States. This was purely a crime for ransom and is being prosecuted in the United States solely because Mr. Maharaj had U.S. citizenship and Mr. Straker did not. If Mr. Maharaj had retained his Trinidadian citizenship, this case would not be before this Court. This, defendant submits, is not consistent with the Legislative History of the Hostage Taking Act.. The circumstances surrounding this

*United States v. Younis*, 924 F.2d 1086 (DC. Cir. 1991) appears to be the only decision from this Circuit that concerns a challenge to 18 U.S.C. 1203[4]. The challenge in *Younis (*which was ultimately denied) was substantively different to the challenge presented herein. There exists another significant distinguishing factor between the two cases*. Younis* involved an armed hijacking of an airplane in Jordan and the taking of hostages, including two United States citizens. The hijacking was unquestionably politically motivated and was a clear act of terror. It was precisely the type of crime envisioned in the Legislative History of 18 U.S.C. § 1203. This is in stark contrast to this case which is exclusively a kidnapping for ransom having absolutely no international implications whatsoever.

Defendant recognizes that other courts of the United States have addressed this issue and found that equal protection is not violated by the statute. The closest case factually is *United States v. v. Lue*, 134 F.3d 79 (2d. Cir.1998). In that matter charges arose from an unsuccessful abduction and attempt to force a ransom payment within the United States. The same equal protection challenge based upon alienage was presented to the Court. As a preliminary matter, the Court determined that, "There is little doubt, despite government protestations to the contrary, that the Hostage Taking Act discriminates against offenders on the basis of alienage." Id. 85.   Having reached the issue of the facially discriminatory language of the Hostage Taking Act, the Court identified the substantive issue that was at the heart of the dispute.: "The principle area in

---

prosecution are not a compelling reason for Mr. Starker to be singled out for prosecution simply because of his alienage.

[4] The challenge was not based upon equal protection. Rather, the challenge was to the jurisdiction of the Court to hear the case where the criminal acts occurred outside of the United States.

dispute in defendant's equal protection challenge is then, the appropriate level of judicial scrutiny to which the Act must be subjected." Id 86.

The defendant argued, as is argued herein, that heightened judicial scrutiny was the reviewing standard. While recognizing that alienage has been treated as a suspect classification requiring heightened scrutiny, the *Lue* Court ultimately ruled that "The situation is different when it is the federal government that is drawing the distinction between citizens of the United States and those of foreign countries". Id. The basis for allowing the federal government to seemingly discriminate against individuals based upon their alienage seems to be found in the following language: "The Court has recognized that the federal government has national interests when dealing with aliens that are different from those of the individual states." Id, citations omitted.

Defendant does not agree with the holding in *Lue*[5], but does point to the following language in the opinion suggesting that it supports Mr. Straker's position.

> The classification drawn by the Hostage Taking Act covers all aliens involved in Hostage-taking incidents. The asserted purpose of the statute, along with the antecedent Convention, is to address a matter of grave concern to the international community: *hostage taking as a manifestation of international terrorism. See Hostage Taking Convention,* T.I.A.S. No. 11,081. We recognize that in the Hostage Taking Act Congress employs the classification of alienage to proscribe conduct which may not always bear a direct relationship to the Act's principal object of stemming acts of terrorism, and that *at some point a classification of this sort may have a relationship to the asserted goal [which] is so attenuated as to* render the distinction arbitrary or irrational."

134 F. 3d at 87, emphasis supplied, citations omitted

---

[5] The *Lue* court ultimately found that " Congress rationally concluded that a hostage taking within our jurisdiction involving a non-citizen is sufficiently likely to involve matters implicating foreign policy or immigration concerns as to warrant a federal criminal proscription. The connection between the act and its purpose is not so attenuated as to fail to meet the rational-basis standard." Id. 87

Defendant submits that 18 U.S.C. § 1203 was very specifically designed as a means to combat acts of terrorism. There is nothing to suggest that it was enacted to provide the United States with a means of prosecuting purely local kidnappings that could be prosecuted in the nation where the crime occurred. The facially discriminatory language of the statute, in the context of the factual circumstances applicable to Anderson Straker, violates the Equal Protection Clause and Due Process Clause of the United States Constitution. The indictment should therefore be dismissed.

Respectfully submitted,

_____/s/_____

Steven R. Kiersh #323329

5335 Wisconsin Avenue, N.W., Suite 440

Washington, D.C 20015

(202) 347-0200

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing was served via PACER and Regular mail upon Bruce Hegyi, Esquire, Assistant U.S. Attorneys, 555 4th Street, N.W., Washington, D.C,. 20530 and via PACER upon all other counsel of record on this the 8th day of April 2008

_____/s/_____

Steven R. Kiersh

9