**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | **Criminal No. 06-102 (JDB)** |
| **ANDERSON STRAKER, WAYNE PIERRE, CHRISTOPHER SEALEY, KEVIN NIXON,** | *** REDACTED VERSION *** |
| **Defendants.** | |

**MEMORANDUM OPINION**

    Defendants Anderson Straker, Wayne Pierre, Christopher Sealey, and Kevin Nixon were extradited from the Republic of Trinidad and Tobago ("Trinidad") to the United States in July 2007 to face charges of conspiracy to commit hostage taking resulting in death in violation of 18 U.S.C. § 1203, and aiding and abetting hostage taking resulting in death. The charges arise from the abduction and death of a U.S. citizen, Balram Maharaj, in Trinidad in April 2005. Presently before the Court are Sealey's and Nixon's motions to exclude "other crimes" evidence under Fed. R. Evid. 404(b), multiple motions to conduct depositions of witnesses pursuant to Rule 15 of the Federal Rules of Criminal Procedure, and Straker's motion to compel discovery relating to an alleged joint venture between the United States and Trinidad concerning the investigation of the Maharaj case.[1] For the reasons stated below, the motions will be granted in part and denied in part.

---

[1] The Court will treat the motions to conduct Rule 15 depositions and to compel discovery as being made by each defendant, in light of several motions to adopt co-defendants' motions and their common interest in much of the requested information.

**DISCUSSION**

**I.     Rule 404(b) Evidence**

The government has submitted a notice of intention to introduce other hostage takings by defendants Pierre and Nixon pursuant to Fed. R. Evid. 404(b). This "other crimes" evidence consists of (1) the hostage taking of Dexter Jagdeo on December 16, 2004, by Pierre and seven other defendants in this case; (2) the hostage taking of Robin Ramadar on March 4, 2005, by Pierre and four other defendants; (3) the hostage taking of Kazim Rahim on May 4, 2005 by Nixon, Pierre, and five other defendants; and (4) the hostage taking of Gerald Gopaul on July 8, 2005 by Pierre and five other defendants.[2] See Government's Notice of Intention to Introduce Evidence Pursuant to Fed. R. Evid. 404(b) ("Gov't's Rule 404(b) Notice") (filed May 1, 2008). Nixon was allegedly involved in the Rahim hostage taking, and Pierre in all four. The government contends that the evidence is probative of defendants' "motive, opportunity, intent, preparation, plan, knowledge, identity, [and] absence of mistake," as enumerated in the rule, and, in particular, that it is relevant to the background of the conspiracy charged and how the defendants came to be involved in the conspiracy. Id. at 10-13. Nixon seeks disclosure of additional details on the purpose of the other crimes evidence; both Nixon and Pierre have moved to exclude the evidence from trial altogether on the ground that is not relevant to any of the legitimate purposes specified in Rule 404(b) and, in any event, is unfairly prejudicial. The government has responded with a supplemental filing further addressing the other crimes evidence. See Government's Response in Compliance with the Court's Order dated July 17, 2008

---

[2] In total twelve defendants have been indicted in this case. In addition to Straker, Pierre, Sealey, and Nixon, there are three who have pled guilty, one acquitted at a previous trial, and four pending extradition from Trinidad.

("Gov't's Supplemental Mem.") at 1-5.

"Under the law of this circuit, Rule 404(b) is a rule of inclusion rather than exclusion, and it is quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." United States v. Long, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (citation and internal quotation marks omitted). Hence, other crimes evidence may be admitted "so long as the evidence is offered for any other relevant purpose." United States v. Lawson, 410 F.3d 735, 741 (D.C. Cir. 2005). Where the other crimes are submitted to show motive or intent, the evidence must meet a threshold level of similarity. Long, 328 F.3d at 661. "What matters is that the evidence be relevant to show a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation." Id. at 661 (citation and internal quotation marks omitted). Such a "pattern of operation" may be shown by acts "closely related" to the offense charged, and is not limited to identical incidents. Id. If a court determines that the evidence is admissible under Rule 404(b), it must then decide whether the probative value is "'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,'" or by other considerations set out in Rule 403.[3] See Lawson, 410 F.3d at 741 (quoting Fed. R. Evid. 403).

The evidence concerning the four other hostage taking events is clearly probative of Nixon's and Pierre's motive and intent, and thus is relevant to an issue other than character. Like the charged offense, the other crimes each involved hostage taking for ransom; each employed similar means, i.e., abduction of a victim at gunpoint and a waiting vehicle; each occurred in

---

[3] The other considerations are "undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Trinidad; and each involved many of the same conspirators, including several co-defendants in this case. Moreover, the other crimes were close in time to the hostage taking charged in this case, all within four months of the April 2005 abduction of Balram Maharaj. Pierre contends that the crimes must have a "startling resemblance" to one another to be admitted to prove that the identity of the person involved in the other crimes is the same as in the pending case. Pierre's Mot. in Limine at 5. But that argument overstates what is required under Rule 404(b) -- with respect to "motive" and "intent," this Circuit has held that the other crimes need only be "closely related to the offense" at issue to be probative; "exact congruence" is not required. Long, 328 F.3d at 661. Furthermore, "[i]in a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other offenses 'to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed.'" United States v. Mathis, 216 F.3d 18, 26 (D.C. Cir. 2000) (quoting United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000)). Based on the similarities between the other hostage takings and the present offense, the Court concludes that the evidence is offered for the legitimate purposes of proving, inter alia, the background of the conspiracy and how the relationships between the participants developed, as well as defendants' motive, intent, knowledge, preparation, and plan.[4]

---

[4] Pierre also contends that the other crimes evidence lacks probative value because there were no convictions or even arrests. See Pierre's Mot. in Limine at 6. But "[t]he other activities need not have resulted in a charge or conviction." Long, 328 F.3d at 661. Other crimes evidence may be conditionally admitted subject to proof from which a jury reasonably could conclude by a preponderance of the evidence that the defendant committed the crimes. United States v. Ruffin, 40 F.3d 1296, 1298 (D.C. Cir. 1994) (citing Huddleston v. United States, 485 U.S. 681, 690 (1988)). The government has represented that here the proof of the other crimes consists of the testimony of co-conspirators to those hostage takings. See Gov't's Supplemental Mem. at 4.
(continued...)

The Court turns next to whether the probative value of the other crimes evidence is "substantially outweighed" by the danger of unfair prejudice or other considerations under Rule 403. As the foregoing discussion shows, the probative value is strong because the other crimes would show how the relationships between the alleged co-conspirators developed and their motives for acting, within the relevant time frame. The danger of unfair prejudice is fairly low because, except perhaps for the Gopaul hostage taking, the other crimes evidence "adds no emotional or other pejorative emphasis not already introduced by the evidence" of the charged offense. See Lawson, 410 F.3d at 742; see also United States v. Cheng, No. 97-1016, 1997 WL 738588, at *1 (2d Cir. Nov. 21, 1997) (holding that the Rule 403 balancing favored admissibility where "the uncharged kidnapping was not more sensational or inflammatory than the charged crimes while tending to show how the relationships formed among the conspirators"). Furthermore, a limiting instruction will ordinarily suffice to protect the defendants' interests. Long, 328 F.3d at 662.

The Court does, however, have concerns about the needless presentation of cumulative evidence and undue delay, and whether it makes sense to spend a disproportionate part of the trial on Pierre's involvement in other hostage takings. (Only one of the other crimes involved Nixon.) The Court also considers that, of the four other hostage takings, the one presenting the most likely case for some degree of unfair prejudice is the Gopaul hostage taking because Gopaul was the only hostage who died; indeed, the circumstances suggest he was intentionally killed

---

[4](...continued)
Thus, the Court does not presently anticipate that a deficiency in proof of the other crimes provides a ground for excluding them, but will consider objections based on any alleged deficiencies at the time of trial.

because of an insufficient ransom offer. Government's Rule 404(b) Notice at 7-8. That is significantly different from the hostage taking charged in this case, in which the victim -- a diabetic -- allegedly died as a result of deprivation of medical attention. Second Superseding Indictment ¶¶ 10(43)-(44), 10(66), 10(72). The Court thus determines that, under the required Rule 403 balancing, evidence of the Jagdeo, Ramadar, and Rahim hostage takings will be admitted, but evidence of the Gopaul hostage taking will be excluded to avoid the unnecessary presentation of cumulative evidence and to minimize the danger of unfair prejudice.

## II.     Rule 15 Depositions

Defendants Straker, Pierre, Nixon, and Sealey have each submitted motions to conduct depositions of witnesses pursuant to Rule 15 of the Federal Rules of Criminal Procedure. Their proposed lists of witnesses, submitted ex parte, identify over 30 witnesses to be deposed, each of whom resides abroad. Information regarding the identity of the witnesses will remain under seal.[5] However, insofar as the motion to conduct depositions is granted, the Court provides the identity of the witnesses in this decision because the government is entitled to notice of depositions once a decision is made to schedule them. See Fed. R. Crim. P. 15(b)(1).

The purpose of Rule 15 is "to preserve testimony for trial, not to 'provide a method of pretrial discovery.'" United States v. Kelley, 36 F.3d 1118, 1124 (D.C. Cir. 1994) (quoting United States v. Troutman, 814 F.2d 1428, 1453 (10th Cir. 1987)). Under Rule 15, the

---

[5] In some circumstances, the Court has found it necessary to provide a brief general description of the proffered testimony (which some defendants also have done in their publicly-filed motions). The Court has determined that the public interest in this de minimis disclosure outweighs the defendants' interest in maintaining that portion of their witness lists under seal. The Court will keep the names and other identifying information of non-testifying proposed witnesses under seal. The Court thus has posted on the public docket a redacted version of this decision, and separately filed an unredacted version under seal.

proponent of the deposition "bears the burden of demonstrating that 'exceptional circumstances' necessitate the preservation of testimony through a deposition." Id. at 1124.  To satisfy this burden, a defendant must (1) establish that the testimony sought is material, (2) prove that the witnesses are unavailable to testify at trial, and (3) make "some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates" him. Id. at 1125 (citation omitted); accord United States v. Cannon, 475 F.3d 1013, 1022 (8th Cir. 2007); United States v. Eyong, Cr. No. 06-305, 2007 WL 1576309, at * 1 (D.D.C. 2007).  Unavailability is defined by reference to Federal Rule of Evidence 804(a), which provides, in relevant part, that a witness is unavailable if he or she is "absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." United States v. Aguilar-Tamayo, 300 F.3d 562, 565 (5th Cir. 2002).

      A.      **Depositions Proposed by Straker and Pierre**

The Court considers the motions of Straker and Pierre together because of common elements (including one witness) in their motions.  As a threshold matter, both defendants failed to make any showing whatsoever that the proffered witnesses are "unavailable" to testify at trial, with the exception of one incarcerated witness referred to herein as Jane Doe [*** redacted ***] (discussed infra).  Instead, they assume that because the witnesses reside abroad, and thus lie outside the reach of a subpoena, they are "unavailable" to testify. See Straker's Mot. at 3; Pierre's Mot. at 3.  Pierre, however, concedes that four of his witnesses have "stated that they would reluctantly travel to the United States," and two witnesses apparently may but have not made a "final commitment"; counsel only fears the witnesses will "change their minds." Pierre's Mot. at 4; Pierre's Reply at 4.  Furthermore, based on a review of Straker's witness lists, the Court finds it

quite plausible that several of the witnesses who would testify on the subject of his travel to Canada and/or his conditions of confinement in Trinidad would voluntarily testify. Of course, the burden is upon Straker to procure their attendance by "reasonable means," and then return to the Court for relief under Rule 15 only if, despite attempts to procure their voluntary attendance, they are, in fact, unavailable. See Aguilar-Tamayo, 300 F.3d at 565.

    Straker's and Pierre's lists of proposed witnesses suffer from a second problem as well. The vast majority of the proposed witnesses would offer testimony only indicating the types of employment, family, and community activities that Straker and Pierre were involved in (including locations and travel times involved), apparently to demonstrate that it would have been difficult for Straker or Pierre to have participated in the meetings and other events at issue in this case.[6] However, the proffered testimony offers only "unsubstantiated speculation" as to the whereabouts of Straker and Pierre at the times of the alleged conspirators' meetings and/or the "other crimes" at issue in this case. The Court sees nothing exculpatory in the summary of testimony submitted by Straker and Pierre as to this category of witnesses.

    Turning to the proffered testimony of the incarcerated witness, Jane Doe, the Court concludes that her testimony is not material. Straker and Pierre proffer that she will testify on two topics: (1) the conditions of Straker's confinement which allegedly rendered his subsequent statements to an FBI agent involuntary; and (2) her knowledge of the victim's health situation, which would allegedly rebut the government's expert testimony concerning the victim's death

---

[6] As to Straker, these witnesses are: *** redacted text *** . See Straker's Sealed Addendum of List of Witnesses to Be Deposed at 1-4. As to Pierre, these witnesses are: *** redacted text *** . See Pierre's Ex Parte Under Seal List of Witnesses to Be Deposed.

from a diabetic coma.  Straker's Mot. at 3; Pierre's Reply at 2.  However, the proffered testimony shows that the incarcerated witness does not have personal knowledge of Straker's conditions of confinement, and would primarily testify as to her own conditions of confinement -- testimony that is not material to Straker's case.[7]  Furthermore, the state of the victim's health at the time the victim was abducted is not material to this case because the foreseeability of his death is not an element of the offense.  See United States v. Suchit, Cr. No. 06-102, Jury Instructions at 36, 39 (instructing the jury that the offense of conspiracy to commit hostage taking resulting in death requires the government to prove that "the hostage taking, in fact, caused the victim's death," and further explaining "[i]t is not necessary to find his death was intended as part of the original plan, only that his death was, in fact, caused by the conspiracy.").

### B.     Depositions Proposed by Nixon and Sealey

The Court considers Nixon's and Sealey's motions together because they seek to depose several of the same witnesses -- a consequence of their similar alleged roles in the hostage taking.

---

[7] Counsel proffers only one potentially relevant hearsay statement by this witness that may be material: her statement that Straker told her he was hit by an FBI agent on one occasion. However, counsel's brief indicates that this aspect of the proffered testimony is relevant only to the upcoming hearing on Straker's motion to suppress statements.  The Court assumes that counsel is aware that he may obtain an affidavit from this witness for use at this hearing, as the Court may rely on hearsay statements in resolving a motion to suppress.  See United States v. Suchit, 480 F. Supp. 2d 39, 42 & n.3, 44-45 (D.D.C. 2007).

Moreover, counsel has represented that two other witnesses have testimony concerning Straker's conditions of confinement (including the FBI agent incident).  See Straker's Mot. at 2 ("Defendant has identified at least three witnesses [Doe and two others] who can testify as to the oppressive conditions of his confinement and who will testify that he complained to them about being assaulted by an F.B.I. agent in Trinidad."); Straker's First Ex Part Under Seal List of Witnesses at 4-5, 7.  Indeed, the identity of one witness indicates he was in a position to have much more information than Doe.  Based on their identities [ *** redacted text *** ], the Court believes they would readily supply affidavits or voluntarily appear at the hearing.  In light of these circumstances, the Court finds that there are not "extraordinary circumstances" warranting Doe's deposition.

The indictment alleges that Nixon and Sealey were the only two defendants who actually entered the Samaan Tree Bar and physically removed the victim into a getaway car. Nixon proffers three Trinidadian witnesses at or outside the bar who will provide a description of the assailants that allegedly does not match Nixon; Sealey also contends that these same witnesses will not identify him.

Counsel for Nixon has interviewed these three witnesses regarding the possibility of travel from Trinidad to the United States to testify, and they have refused to do so. Therefore, they are unavailable. Moreover, the summary of their testimony strongly indicates that it will be material, as it consists of classic identification testimony by eyewitnesses to the abduction at the Samaan Tree Bar. Accordingly, the Court will grant Nixon's and Sealey's motion to conduct depositions of the following witnesses: Anand Gajadhar, Zyroon Gajadahr, and Gayadeen Boodhoo.[8]

Nixon also proffers the testimony of a witness who will testify that Nixon played in a "Wabie tournament" at the Firehouse Bar "during the time of the kidnapping." This witness also has refused to travel to the United States to testify, and is thus unavailable. His testimony is clearly material because, if found credible by the jury, it would provide an alibi for Nixon and disprove a substantive allegation of the indictment -- that Nixon was one of the abductors at the Samaan Tree Bar. Therefore, the Court will grant the motion to take the deposition of Vincent Julien.

---

[8] As noted earlier, Rule 15(b)(1) provides that the names of the witnesses to be deposed will be disclosed to the government when scheduling of the deposition takes place. Consistent therewith, the names of the witnesses to be deposed are provided in this decision although counsel originally filed these names under seal. See Fed. R. Crim. P. 15(b)(1)

Nixon has failed, however, to demonstrate that his remaining six witnesses have material testimony. The summaries indicate they have only general observations about the Mellow Moods Bar (the site of several alleged planning meetings), Nixon's general whereabouts on the day of the hostage taking, or the plausibility of this group of defendants working together.[9] This type of testimony provides only unsubstantiated speculation about Nixon's involvement, in contrast to direct or circumstantial evidence of Nixon's actions at the time of the alleged events. Therefore, the Court finds that Nixon has failed to carry his burden of demonstrating "extraordinary circumstances" that warrant conducting further depositions beyond those specified above.

Turning to Sealey, he makes no attempt to show that any of the additional witnesses he has proposed are unavailable. See Sealey's Ex Parte Under Seal List of Witnesses to Be Deposed (filed July 7, 2008). No information is provided on whether he has attempted to procure their voluntary attendance at trial, much less whether they have refused to testify at trial. Sealey's motion is also deficient because his witnesses (excluding the three Samaan Tree Bar witnesses discussed above) reportedly can make only general observations about his whereabouts the day of the hostage taking, in contrast to testimony concerning his whereabouts at any specific times.[10]

---

[9] These witnesses are: *** redacted text *** . Nixon also makes reference to *** redacted text *** . Without a more detailed proffer of his testimony, the Court is unable to conclude that his testimony is material.

[10] Sealey names one additional person [***redacted text***] at the Samaan Tree Bar who reportedly would offer exculpatory identification testimony. See Sealey's Ex Parte Under Seal List of Witnesses to Be Deposed ¶ C. If this witness states that he/she will refuse to testify at trial, the Court will reconsider whether his/her deposition may proceed.

11

Therefore, Sealey's motion will be denied, except insofar as the Court has determined that the depositions of the Samaan Tree Bar witnesses listed above may proceed.

As to the logistics of the depositions, defendants have not indicated whether these particular witnesses will voluntarily appear for depositions even in Trinidad, and one counsel has noted that, as to witnesses who will not agree, a letter rogatory requesting the assistance of a court of Trinidad may be needed. If necessary, counsel shall prepare such a motion for issuance of a letter rogatory forthwith. Additionally, defendants must provide notice of the date and location of the depositions to the government, consistent with Rule 15(b). Counsel shall make good faith efforts to schedule the depositions at times mutually convenient to all counsel.[11]

## III.    Straker's Motion to Compel Discovery Concerning Joint Venture

Straker has moved to compel the production of all "written documentation between the United States and Trinidad/Tobago that relates to the murder of Balram Maharaj," in order to demonstrate that a joint venture existed between the United States and Trinidad concerning that investigation -- a determination that he contends is necessary to prevail on his motion to suppress his statements to Trinidad authorities, based on alleged Fifth Amendment violations. Straker's Second Mot. to Compel at 1. Pierre and Sealey also have joined in the motion to compel, having also made statements to Trinidad authorities. The government, however, has represented that it will <u>not</u> seek to introduce at trial the statements made by Straker or Pierre to Trinidad authorities. See Gov't's Supplemental Mem. at 5. As to Sealey, the government intends to introduce only one

---

[11] Counsel are advised that the Court's preliminary view is that, given the foreign location of the depositions, defendants' presence at those depositions is both impracticable and unnecessary, notwithstanding Rule 15(c)'s general provision for the attendance of a defendant absent waiver. The witnesses are defense witnesses, obviating any Confrontation Clause issues.

statement made by Sealey to Trinidad authorities on August 8, 2006. Id.

Thus, Straker's motion to compel discovery concerning a joint venture is arguably a live motion only as to Sealey -- but, unlike Straker, Sealey's motion to suppress does not argue the existence of a joint venture in the overall investigation. See Sealey Mot. to Suppress Statements at 3-5. Instead, he argues that the FBI's alleged participation (through the assistant legal attaché, Marvin Freeman) in his interrogation triggered his rights under Miranda v. Arizona, 384 U.S. 436 (1965). Id. In his latest filing, however, Sealey now recharacterizes his motion to suppress as arguing a joint venture based on the overall investigation of the Maharaj case. See Sealey's Supplemental Mem. at 3 (filed July 25, 2008). But his argument continues to depend largely on the existence of a "joint[] interview" that included the FBI. See id. ("Defendant was jointly interviewed by law enforcement on August 8, 2008."); see also United States v. Abu Ali, 528 F.3d 210, 228 (4th Cir. 2007) (holding that the joint venture doctrine applies when "United States law enforcement agents actively participate in questioning conducted by foreign authorities"). The extent of the FBI's involvement, if any, in Sealey's interrogation by Trinidad police on August 8, 2006 is best resolved by hearing the testimony of the officers present -- the two Trinidad constables and Freeman. The government has indicated its willingness to produce those individuals at the suppression hearing at the Court's request. Gov't's Supplemental Mem. at 6. Because that testimony will be significant in resolving Sealey's underlying motion to suppress -- and certainly is far more relevant to the suppression motion than how the Maharaj investigation generally was handled -- the Court hereby puts the government on notice that it will expect to hear the testimony of those witnesses. In light of these developments, the Court will deny Straker's motion to compel discovery concerning joint venture as to all defendants.

**CONCLUSION**

For the reasons stated above, the Court will deny Nixon's motion in limine to exclude Rule 404(b) evidence, and will deny in part and grant in part Pierre's motion to exclude Rule 404(b) evidence. Evidence of the Jagdeo, Ramadar, and Rahim hostage takings will be admitted, but evidence of the Gopaul hostage taking will be excluded. The Court will grant Nixon's and Sealey's motions to conduct Rule 15 depositions with respect to the following witnesses: Anand Gajadhar, Zyroon Gajadahr, Gayadeen Boodhoo, and Vincent Julien. Defendants' motions to conduct any further depositions is denied. Straker's second motion to compel discovery also will be denied as to all defendants. A separate order has been issued on this date.

                                                                 /s/
                                                JOHN D. BATES
                                     United States District Judge

Date: July 28, 2008